**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

CYNTHIA DONN TESSLER,

        Plaintiff,

v.                                    ACTION NO. 2:08cv234

NBC UNIVERSAL, INC.,

        Defendant.

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

      This action was referred to the undersigned United States Magistrate Judge pursuant to

the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil

Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern

District of Virginia.

      This case was referred for a report and recommendation on NBC Universal, Inc.'s

("NBC's") Motion to Dismiss [Doc. No. 15].  For the reasons set forth below, the Court

recommends GRANTING in part, and DENYING in part, NBC's Motion to Dismiss.

## I.  FACTUAL AND PROCEDURAL HISTORY

      This matter arises from the business dealings between an independent producer and a

major entertainment conglomerate.  Plaintiff Cynthia Donn Tessler ("Tessler") is a media

producer residing in the City of Norfolk, Virginia.  (Am. Compl. ¶¶ 5, 7.)  Defendant NBC is a

media and entertainment corporation with its principle place of business in New York, New

York.  (Am. Compl. ¶¶ 6, 8.)  In early 2001, Tessler began developing "Parenting Your Parent"

("PYP"), a series of video programming intended to explore the issues related to adult children

caring for their aging parents.  (Am. Compl. ¶ 10.)  Tessler filed a U.S. Copyright Registration on

December 28, 2001, which contained the following materials: (1) a copy of Tessler's pilot video

for PYP, in DVD format ("Video"); (2) a written copy of the PYP introduction and story

segments for video production ("Treatment"); and (3) an excerpt and table of contents for the

book, "Parenting Your Parents: A Baby Boomer's Guide to Caring For Your Aging Parent"

("Book Excerpt").[1]  (Am Compl. ¶ 11.)

From August 2002 through September 2004, Tessler engaged in discussions with NBC

regarding the possibility of NBC using PYP programming, or acting as a distribution partner.

(Am. Compl. ¶¶ 16-17.)  During the course of these discussions, Tessler provided NBC with the

entirety of her materials, including copies of the materials previously deposited with the U.S.

Copyright Office.  (Am. Compl. ¶ 17, 22.)  Eventually, NBC informed Tessler that NBC desired

to use the copyrighted materials as part of future NBC programming.  (Am. Compl. ¶ 24.)

Specifically, NBC promised to pay Tessler $750,000 in return for the right to use the materials.

(Am. Compl. ¶ 24.)  By 2004, however, the collaborative project had not come to fruition, and

NBC informed Tessler that NBC would not be using Tessler's copyrighted materials.  (Am.

Compl. ¶ 25.)  In response, Tessler issued a letter to NBC on September 1, 2004, memorializing

that (1) negotiations between Tessler and NBC had ceased; (2) Tessler intended to seek other

means of distribution for PYP; and (3) Tessler retained all rights to PYP and would seek legal

---

[1] There is uncertainty regarding whether the Deposit Copy contains the Treatment and Book Excerpt (Am. Compl. ¶ 14-15), but for purposes of this motion, NBC concedes that the court may consider the Video, Treatment, and Book Excerpt as included in the Deposit Copy (Def.'s Br. at 11).

action if NBC continued development of her materials.  (Am. Compl. ¶ 27.)  At oral argument, Tessler's counsel conceded that Tessler never demanded return of the copies of her materials.

In 2007, NBC began airing a television series, "Trading Places," in conjunction with the NBC Nightly News.  (Am. Compl. ¶ 28.)  Tessler alleges that "the NBC Nightly News series directly copies, in whole or in part and without authorization, the original material of Ms. Tessler's program for 'Parenting Your Parent.'" (Am. Compl. ¶ 28.)  Tessler further alleges that a former NBC executive admitted "that he and others at NBC . . . 'used to sit around and try to figure out a way to steal Parenting Your Parent from [Tessler].'" (Am. Compl. ¶ 36.)

On May 20, 2008, Tessler filed a Complaint against NBC in this court. [Doc. No. 1].  By joint motion, filed July 11, 2008, the parties agreed to amend the response schedule. [Doc. No. 11].  Tessler filed her Amended Complaint on July 21, 2008, which alleges (1) copyright infringement, (2) breach of contract, (3) breach of implied contract, and (4) conversion. [Doc No. 14].  In response, NBC filed a Motion to Dismiss on August 1, 2008, contending that all four claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 15].  On October 10, 2008, this court heard oral argument on the motion.  Duncan Glover Byers, Esq., represented Tessler, and Stephen Edward Noona, Esq., and Richard Johan Conrod, Jr., Esq., represented NBC.  The Contract Court Reporter was Carol Tayloe.

## II. <u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency of the complaint, and not the facts in support of it." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000)(citations omitted).  In order to survive the motion to dismiss, the complaint must provide "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

127 S.Ct. 1955, 1959 (2007)(quotations omitted).  Also, the "factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id*. at 1965.  And while the district court must consider the facts in a light most favorable to the plaintiff, the court is not bound by the complaint's "labels and conclusions," nor by "a formulaic recitation of a cause of action's elements."  *Id.* at 1959.  Furthermore, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts.*, 213 F.3d at 180.

In addressing a motion to dismiss under Rule 12(b)(6), the court must exclude any evidence outside the scope of the pleadings.  Fed. R. Civ. P. 12(d).  An exhibit submitted by the defendant, however, can be considered "if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity."  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## III. ANALYSIS

NBC has moved to dismiss all counts of Tessler's Amended Complaint.  First, NBC asserts that the copyright infringement claim fails, as a matter of law, to show sufficient similarity between Trading  Places and protectable elements of PYP.  Second, NBC argues that federal copyright law preempts the remaining state law claims for breach of contract, breach of implied contract, and conversion.  NBC further argues that the state law actions, even if not preempted, fail to state claims upon which relief can be granted.

### A.  Copyright Infringement (Count I)

In order to establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  For purposes of this motion, it is undisputed that

4

Tessler owns a valid copyright in the PYP materials.  Thus, the issue is whether Tessler has sufficiently alleged the copying of protected elements of PYP.  "As is often the case, direct evidence of copying is lacking,[2] making it necessary to look to circumstantial evidence."  *Towler v. Sayles*, 76 F.3d 579, 581-82 (4th Cir. 1996).

In order to establish copying through circumstantial evidence, Tessler must show that NBC had access to copyrighted materials and created a product that was "substantially similar" to the copyrighted materials.  *Id.* at 582.  *See also* 4 M. Nimmer & D. Nimmer, *Copyright* § 13.01[B] (2008)("Legions of cases promulgate the twin requirements of access plus substantial similarity.").  Here, NBC concedes that it had access to Tessler's copyrighted PYP materials.  The central issue, therefore, is whether NBC's program, Trading Places, is substantially similar to the protected elements of PYP.

### 1. Court Has Authority to Review and Compare Trading Places and PYP Materials.

As a preliminary matter, NBC asserts that the Court has authority to review and compare Trading Places and PYP for the purpose of deciding the Motion to Dismiss.  In addressing a motion

---

[2] Although the Amended Complaint alleges that "the NBC Nightly News series *directly* copies, in whole or in part and without authorization, the original material of Ms. Tessler's program for 'Parenting Your Parent,'" the Amended Complaint does not provide a single example.  (Am. Compl. ¶ 28.)(emphasis added).  Under *Twombly*, this Court is not bound by such "a formulaic recitation of a cause of action's elements."  127 S.Ct. at 1959.  Furthermore, "[w]hen a district court considers the original work and the allegedly copyrighted work in deciding a 12(b)(6) motion, the legal effect of the works are determined by the works themselves rather than by allegations in the complaint."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002).  Tessler also argues that the Amended Complaint alleges direct evidence of copying through the statement of an NBC executive, but this argument is misleading.  According to the Amended Complaint, the NBC executive stated "that he and others at NBC . . . 'used to sit around and try to figure out a way to steal Parenting Your Parent from [Tessler].'"  (Am. Compl. ¶ 36.)  Even though the Court must accept the allegation as true, the statement does not constitute *direct* evidence of copying.  Rather, the allegation demonstrates that at the time these executive meetings took place, NBC had *not* yet stolen (copied) PYP.

to dismiss under Rule 12(b)(6), a district court must exclude evidence outside the scope of the pleadings. Fed. R. Civ. P. 12(d). Tessler attached the following to the Amended Complaint: (1) PYP's pilot video in DVD format; (2) PYP's introduction and story segments for video production; and (3) an excerpt and table of contents from Tessler's book, "Parenting Your Parent: A Baby Boomer's Guide to Caring for Your Aging Parent." Thus, these exhibits are clearly within the scope of the pleadings and subject to the Court's review for the Motion to Dismiss. *See* Fed. R. Civ. P. 10(c).

Furthermore, the Court can also consider the submitted footage of Trading Places. The district court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State of Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). The allegedly infringing news program, Trading Places, is clearly integral to Tessler's Amended Complaint, and Tessler does not dispute this. Rather, Tessler argues that the submitted footage of Trading Places is not authentic, because the footage is incomplete and does not include the related materials on the website, MSNBC.com. This argument fails for two key reasons. First, the absence of certain episodes or materials does not strip the submitted episodes and materials of authenticity. *See, e.g., Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131 (C.D.Cal. 2007)(granting motion to dismiss copyright infringement claim for lack of substantial similarity, even though the parties had not attached all the episodes). Second, Tessler identified MSNBC.com in its Amended Complaint as a source of the infringing material. (Am. Compl. ¶ 33.) As a result, the website material is incorporated by reference and properly before this Court for review. *Id.* ("This [incorporation by reference doctrine] serves a critical policy interest in 'preventing plaintiffs

6

from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based.'")(quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)). *See also Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1280 n.16 (11th Cir. 1999).

Tessler also argues that a comparison of the works by the Court for a Rule 12(b)(6) motion to dismiss would constitute an impermissible determination of fact. The case law rejects this argument, however, by consistently empowering district courts to review and compare works in the context of copyright infringement. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002)("When a district court considers the original work and the allegedly copyrighted work in deciding a 12(b)(6) motion, the legal effect of the works are determined by the works themselves rather than by allegations in the complaint."); *Nelson v. PRN Prods.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989)("The trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting defendants' [Rule 12(b)(6)] motion to dismiss the copyright count on the ground that it failed to state a claim for infringing use."); *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *Zella*, 529 F. Supp. 2d at 1130-31 (collecting cases); *Adams v. Warner Bros. Pictures Network*, 2007 WL 1959022, at *5 (E.D.N.Y. June 29, 2007)(collecting cases in the Second Circuit), *aff'd*, 2008 WL 3842890 (2nd Cir. 2008). Tessler has not cited, and this Court cannot find, any controlling precedent to the contrary.[3] Rather,

---

[3] Tessler relies on cases that are inapposite to the present dispute. For example, Tessler cites *Secureinfo Corp. v. Telos Corp.* to argue that the Eastern District of Virginia has denied a motion to dismiss under similar circumstances. 387 F. Supp. 2d 593 (E.D. Va 2005). In *Secureinfo*, however, the defendant did not dispute the *direct* copying of plaintiff's risk management software files. *Id.* at 599-603, 606. Thus, substantial similarity was not even at

the most analogous Fourth Circuit precedent, involving motions for summary judgment, further

supports a trial judge's authority to resolve the issue of substantial similarity as a matter of law.  *See*

*Towler*, 76 F.3d at 584 (upholding the trial judge's decision that, as a matter of law, no jury

comparing "the screenplays could reasonably decide that the two works are substantially similar");

*Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019, 1023 (E.D. Va. 1997)("[A] court may determine

non-infringement as a matter of law on a motion for summary judgment, either because the similarity

between two works concerns only non-copyrightable elements of the plaintiff's work, or because no

reasonable jury, properly instructed, could find that the two works are substantially

similar.")(quotations omitted).

Therefore, the Court has authority to dismiss Tessler's copyright infringement claim if it

concludes that no reasonable jury could find that the Trading Spaces programming is substantially

similar to protected elements of Tessler's PYP materials.  Accordingly, the Court reviewed Tessler's

---

issue.  Instead, the court denied dismissal because the plaintiff specifically alleged that the direct
copies constituted a "substantial part" of the entire software program.  *Id.* at 613.  Since the root
issue of substantial similarity is at issue in the present case, *Secureinfo* is not analogous.  *Jetform
Corp. v. Unisys Corp.* is similarly distinguishable as a software licensing case where the issue
was whether the plaintiff had sufficiently plead the existence of a copyright, rather than whether
the software products were substantially similar.  11 F. Supp. 2d 788 (E.D. Va. 1998).  Tessler
also relies on the denial of summary judgment in *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*,
but the case is clearly inapposite.  261 F. Supp. 2d 502 (E.D. Va. 2003).  Unlike Tessler, the
plaintiff in *Huthwaite* provided "a page by page comparison" of the two works to reveal "some
phrases, metaphors, and diagrams [that were] similar or identical."  *Id.* at 506, 511.  The court
even acknowledged that summary judgment on substantial similarity "is proper where no
reasonable jury, properly instructed, could find that the two works are substantially similar."  *Id.*
at 511 (quotations omitted).  Finally, Tessler cites *Ganz Brothers Toys v. Midwest Importers* for
the proposition that substantial similarity is best suited for the jury.  834 F. Supp. 896 (E.D. Va.
1993).  Even though the *Ganz* court denied the cross-motions for summary judgment, the court
recognized that "[i]n the overwhelming majority of cases in which summary judgment is granted
on the issue of substantial similarity, the court finds that no substantial similarity exists."  *Id.* at
902 n.8.  Therefore, the *Ganz* decision actually undermines Tessler's position.

Video, Treatment, and Book Excerpt, attached to the Amended Complaint, as well the footage of Trading Places submitted by NBC, and the relevant online content of MSNBC.com.

## 2. There is No Substantial Similarity Between Trading Places and PYP.

In order to establish substantial similarity, a plaintiff must satisfy *both* (1) an objective ("extrinsic") test and (2) a subjective ("intrinsic") test. *Towler*, 76 F.3d at 583-84.[4]

### i. Objective Test

The objective test deems two works "extrinsically similar" if the two works "contain substantially similar ideas that are subject to copyright protection." *Id.* at 583. In particular, the court must "search[] for extrinsic similarities such as those found in plot, theme, dialogue, mood, setting, pace or sequence." *Id.* at 584. The similarities must involve protectable elements, however, because "general ideas, themes, or plots are not eligible for copyright protection." *Eaton*, 972 F. Supp. at 1027. *See also Funky Films*, 462 F.3d at 1077 ("We must take care to inquire only whether the protectable elements, standing alone, are substantially similar.")(quotations omitted). With these principles in mind, the Court will address each factor in turn.

---

[4] *Towler*, as controlling precedent, empowers this Court to consider both the objective and subjective tests in determining substantial similarity as a matter of law. 76 F.3d at 583-84. It should be noted, however, that the Ninth Circuit has recently held, for pre-trial motions on substantial similarity, that "courts apply *only the extrinsic test*." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006)(emphasis added). By contrast, "the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Id.* Although the Fourth Circuit originally derived its test for substantial similarity from Ninth Circuit law, *see Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 732-33 (4th Cir. 1990)(citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir.1984)), the U.S. Court of Appeals for the Fourth Circuit has not yet adopted the recent procedural refinements announced in *Funky Films*. Thus, this Court will address both the objective and subjective tests.

### a. Plot

Plot, in the context of copyright law, is generally defined as "the sequence of events by which the author expresses his theme or idea." 4 M. Nimmer & D. Nimmer, *Copyright* § 13.03[A][1][b] (2008). In light of the case law for non-fiction television programming, the plot of Trading Places is not substantially similar to protected elements of PYP's plot. In *Bethea v. Burnett*, for example, the shows "CEO" and "The Apprentice" both depicted "a group of dynamic contestants from varied backgrounds competing in business challenges in a dynamic corporate environment for promotions and benefits and, ultimately, a real job as a top-level executive of a corporation." 2005 WL 1720631, at *11 (C.D. Cal. 2005). The court held that these "[g]eneral plot ideas are not protected by copyright law," since they are "nothing more than a string of generic ideas." *Id.* Similarly, in *Zella*, the district court found that the plots of "Showbiz Chefs" and "Rachael Ray" did not resemble each other, even though both embodied a "talk show format that features a host, guest celebrities, and cooking." *Zella*, 529 F. Supp. 2d at 1135-36. In the present case, Tessler has alleged even less similarity in plot, and more importantly, the dissimilarities are striking. The Treatment states that "Parenting Your Parent is designed to provide concise, practical, and usable information to help people face the issues [involved in caring for elderly parents]." (Am. Compl., Ex. B). Illustrating this educational format, the Video consists almost entirely of expert advice on when and how a child should prevent their elderly parent from driving a vehicle. (Am Compl., Ex. A). In clear contrast, Trading Places is a series of personal interest stories, focusing on the personalities and situations of individual relationships, including NBC's own on-air talent with their parents. Moreover, the growing majority of the online content consists of personal stories mailed in by viewers of the program. In sum, whereas the plot of PYP is a vehicle for educating middle-aged children to

10

properly care for their parents, the plot of Trading Places chronicles the personal struggles of particular individuals dealing with the issue. Therefore, the plots are not substantially similar as a matter of law.

### b. Theme

Likewise, Trading Places and PYP employ distinct themes. As discussed above, PYP frames the issue of aging parents as a challenge with a solution, and seeks to equip the viewer with tools to confront the challenge. Trading Places, by contrast, offers an intimate glimpse into the lives of real families, including NBC journalists, and examines the relationship between child and parent as they confront the issues involved with aging. Trading Places does not focus on providing advice for dealing with these issues, but instead, asks the viewers to send in their own stories and impressions. Although both works involve the general idea of aging parents, "[o]nce viewed beyond the presence of this general idea, any similarity in themes evaporate[s]." *Capcom Co., Ltd. v. MKR Group, Inc.*, 2008 WL 4661479, at *9 (N.D. Cal. Oct. 20, 2008)(holding that the general idea of zombies in a mall is not protectable). For example, the *Zella* court stated that the theme of a "can do attitude" and "presenting solutions to everyday problems" ("Rachel Ray") was dissimilar to "an invitation to look inside celebrity homes, and perhaps get a glimpse of celebrity lifestyles" ("Showbiz Chefs"). *Zella*, 529 F. Supp. 2d at 1136. Similarly, the didactic tone of PYP differs from the personal portraits of Trading Places. Thus, as a matter of law, the themes are not substantially similar.

### c. Dialogue

Tessler does not identify, nor can this Court find, any similarity in dialogue between Trading Places and PYP. Tessler argues that the similarity in *titles* is evidence of substantial similarity, but the argument lacks merit. First, "Trading Places" and "Parenting Your Parent" do not contain a

common word.  Second, even if the titles were identical, a copyright infringement action would be inappropriate because "titles are not copyrightable." *Comins v. Discovery Commc'ns*, 200 F. Supp. 2d 512, 519 (D. Md. 2002).  *See also* 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" are not copyrightable.).  Therefore, the dialogue lacks substantial similarity as a matter of law.

### d.  Mood

As discussed above, Trading Places and PYP produce distinct moods.  Specifically, Trading Places delivers emotional personal stories, whereas PYP delivers practical information so viewers can act pragmatically in the face of difficult emotion.  Even if a reasonable jury identified both moods as "emotional," however, the outcome would not change.  "[C]opyright law does not protect *scenes a faire*," such as "incidents, characters, or settings which, as a practical matter, are indispensable or standard in the treatment of a given topic." *Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019, 1029 (E.D. Va. 1997)(quotations omitted).  *See also Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003)(holding that similar moods of mystery "constitute *scenes a faire*, and merge with the idea of revealing magic tricks"); *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1451 (9th Cir. 1988)(finding that comic moods "are common to the genre of action-adventure television series and movies and therefore do not demonstrate substantial similarity"); *Zella*, 529 F. Supp. 2d at 1136 ("[T]he relaxed, fun mood of the two [cooking] shows is not a protectable element, even though it may be substantially similar.")  Here, the emotional mood is standard, if not indispensable, to a discussion of caring for aging, ailing parents.  Thus, the emotional mood is an example of *scenes of faire*, merges into the general topic, and is not eligible, as a matter of law, for protection.

### e.  Setting

Tessler does not identify, nor can this Court find, any similarity between the *specific* settings of the two works.  As discussed above, even if both projects bring the viewer inside a home or a doctor's office, such generic similarities constitute unprotected *scenes a faire*, and are not eligible for protection.

### f.  Characters

Tessler asserts that the characters of Trading Places and PYP are the same, but this argument is not persuasive.  Although both works include middle-aged children, elderly parents, and subject-matter experts, these stock elements are more examples of *scenes a faire*, and in turn, are not protected forms of expression.  *Eaton*, 972 F. Supp. at 1029 ("Thus, even though the two works share certain superficial similarities, such as two female mechanics, two young boys, and two garage owners . . . the basic human traits that certain characters share, including age, sex, and occupation, are too general or too common to deserve copyright protection.")(quotations omitted).  Furthermore, Trading Places and PYP emphasize different characters.  Whereas Trading Places focuses on the personal history and relationship between child and parent, PYP highlights the experts, drawing heavily from their professional advice.  Therefore, as a matter of law, the characters are not substantially similar.

In sum, Tessler's claim fails the objective test because no extrinsic similarities exist between Trading Places and the *protected* elements of PYP.

### ii.  Subjective Test

For the same reasons discussed above, Tessler's claim also fails the subjective test, which "considers whether the intended audience could determine that the works are substantially similar,

13

usually without the aid of expert testimony." *Towler*, 76 F.3d at 584.  Here, the "intended audience" is the lay public,[5] and the central inquiry is whether an ordinary member of the public would find substantially similarity based on the "total concept and feel" of the works.  *Id.* at 583-84.  In light of the categorical differences that rendered Trading Places and PYP extrinsically dissimilar, it is equally evident that the works are intrinsically dissimilar.  In particular, the public views Trading Places as a personal and community interest news story.[6]  By clear contrast, PYP would strike a reasonable audience as a "how to" video workshop, heavy on advice, and light on the personal narrative that evoked the public's emotional response to Trading Places.  As a result, the distinct "total concept and feel" of the two works demonstrates that Tessler's claim cannot satisfy the subjective test.

In order to avoid dismissal, Tessler's claim of copyright infringement must establish *both* the objective and subjective elements of substantial similarity.  Instead, the claim fails to sufficiently establish *either*.  Thus, as a matter of law, Trading Places is not substantially similar to protected elements of PYP, and Tessler's claim of copyright infringement should be dismissed.

## B.  Breach of Contract (Count II)

### 1.  Preemption

NBC argues that federal copyright law preempts Tessler's state law claim for breach of contract.  Section 301(a) of the Copyright Act, in relevant part, provides:

---

[5] "[I]n any given case, a court should be hesitant to find that the lay public does not fairly represent a work's intended audience."  *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 737 (4th Cir. 1990).

[6] NBC has published online thousands of personal stories sent in by viewers who watched Trading Places.  *See* http://www.msnbc.msn.com/id/17049721/

14

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . *are governed exclusively by this title*. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (emphasis added).   Under the statute's two-prong test, a state law claim is preempted if (1) the work fits within the subject matter scope of federal copyright, as defined by Sections 102 and 103 of the Copyright Act, and (2) the state law rights are equivalent to any exclusive federal rights set out in Section 106.  *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997).

The PYP materials clearly satisfy the first prong of the test.  According to the Amended Complaint, Tessler filed a U.S. Copyright Registration, which included the Video, Treatment, and Book Excerpt.  Under Section 102 of the Copyright Act, the PYP materials are "original works of authorship fixed in any tangible medium of expression," and thus, fall within the subject matter scope of copyright.  17 U.S.C. § 102(a).  Although Tessler argues that "preemption only applies should the Court find that Tessler's materials are *protected* expressions of her idea(s)," (Pl.'s Br. at 27), the Fourth Circuit has rejected this exact argument, finding that it:

> rests on a fallacious interpretation of the Copyright Act. In other words, [Plaintiff] wants to argue that ideas embodied in a work covered by the Copyright Act do not fall within the scope of the Act because the Act specifically excludes them from protection. But scope and protection are not synonyms. Moreover, the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.

*Berge*, 104 F.3d at 1463.  As a result, even though Trading Places did not infringe on protected expressions of PYP, the breach of contract claim still sits in the "shadow" of the subject matter of copyright.

The second prong of the test is not satisfied, however, if the state law claim contains an "extra element," such that the state law claim is "*qualitatively* different from a copyright infringement claim." *Id.* (quotations omitted). An overwhelming body of case law holds that if a breach of contract claim possesses the "extra element" of a promise, the claim is qualitatively different from copyright and avoids preemption. *See Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004)(treating the "implied promise to pay" as the "extra element for preemption purposes" when screenwriter submitted his script to a film studio); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996)(surveying the U.S. circuit courts of appeal and concluding that "a simple two-party contract is not equivalent to any of the exclusive rights within the general scope of copyright and therefore may be enforced")(quotations omitted); *Lennon v. Seaman*, 63 F. Supp. 2d 428, 437 (S.D.N.Y. 1999)(collecting cases). *See also* 4 M. Nimmer & D. Nimmer, *Copyright* § 19D.03[C][2](2008)("The question whether contract law claims are preempted is nicer. As a general rule, contract claims require proof of a significant 'extra element:' the existence of an actual agreement between plaintiff and defendant involving a *promise to pay* for use of disclosed ideas.")(emphasis added). The Amended Complaint alleges that NBC "*promised* Tessler remuneration in an amount not less than  seven hundred and fifty thousand dollars ($750,000.00) in return for NBC's rights to use the materials." (Am. Compl. ¶ 26.)(emphasis added). Under the majority of the case law, listed above, this express promise is the extra element that renders the breach of contract claim "qualitatively different from a copyright infringement claim," and thus, the breach of contract claim is not subject to preemption.

NBC argues that the Fourth Circuit deviates from the majority rule and finds preemption for this type of breach of contract action, but the Court disagrees. In *Acorn Structures, Inc. v. Swantz*,

the Fourth Circuit held that the breach of contract claim was *not* preempted, even where the promise

of compensation was merely "implicit in the contract."   846 F.2d 923, 926 (4th Cir. 1988).

Specifically, if the defendant chose to use plaintiff's copyrighted design plans, the contract

(implicitly) obligated the defendant to purchase either the copyrighted plans or building materials

from the plaintiff.[7]   *Id.* at 924-25.   The court found that this contractual promise of specific

compensation "does not arise out of the subject matter of copyright," and thus, the *Acorn* decision

supports the majority rule that a contractual promise creates a "separate and distinct cause of action."

*Id*. at 926.  *See also ProCD*, 86 F.3d at 1454 (Judge Easterbrook cites the *Acorn* decision to support

the proposition that the "rights created by contract [are not] equivalent to any of the exclusive rights

within the general scope of copyright.").  Here, the alleged contract between Tessler and NBC states

that NBC must compensate Tessler for use of the copyrighted materials.  Moreover, this contractual

promise to pay is an *express* provision, specified at an amount of $750,000.  (Am. Compl. ¶ 26.)

Therefore, the alleged contract's promise of compensation is more concrete than its analog in the

*Acorn* case, providing even greater justification for avoiding preemption.

       NBC also points to several district court decisions to support a finding of preemption, but

---

       [7] NBC overemphasizes the importance of the implied option to buy building materials as the distinguishing element that avoided preemption.  Defendant's obligation to either pay for the plans or pay for building materials amounts to a promise to compensate the plaintiff for use of the copyrighted materials.  Under the majority view, a promise of compensation is sufficient to avoid preemption.  *See* 1 M. Nimmer & D. Nimmer, *Copyright* § 1.01[B][1][a][i] (2008)*.*  And even if this court were to eschew the majority view, Tessler identifies additional components to the contract that would also satisfy NBC's reading of *Acorn*.  The Amended Complaint references and attaches a PowerPoint presentation, in which NBC (1) states that "MSN and MSNBC.com will use its marketing platform to drive traffic to the [PYP website]" and (2) illustrates how NBC will leverage its media assets to maximize exposure for PYP.  (Am. Compl., Ex. G, Part 2 at 20, 52-53.)  Thus, even under NBC's interpretation of *Acorn*, the contracting for marketing services certainly exists outside the scope of copyright.

these decisions are not persuasive. For example, *Fischer v. Viacom International Inc.* also involved an individual who pitched a television series to a major media company, but the meetings and communications between parties did not result in an express contract. 115 F. Supp. 2d 535 (D. Md. 2000). In other words, there was no express promise to pay, and the court held that the breach of *implied* contract claim was preempted "[b]ecause this alleged contract did not regulate the parties' conduct beyond the mere use of Fischer's ideas." *Id.* at 542. Furthermore, the court acknowledged that "courts have generally held that the Copyright Act does not preempt actions for breach of [an express] contract." *Id.* at 541 (citing *Lennon v. Seaman*, 63 F. Supp. 2d 428, 437 (S.D.N.Y. 1999)(collecting cases)). Similarly, in *Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, there was no contractual promise to pay, and the court found preemption where the breach of contract claim "stems only from the provision that '[a]fter termination of this agreement,' [defendant] 'shall have no further right to use, reproduce, distribute, display, or modify any [copyrighted works]' without [plaintiff's] 'consent and agreement to do so.'" 537 F. Supp. 2d 774, 784 (D. Md. 2008). *See also, e.g., Wigand v. Costech Techs., Inc.*, 2008 WL 65517 (E.D. Va. Jan. 4, 2008)(finding preemption where the contract merely barred the use of the copyrighted materials for any purpose not related to the contract).[8] Unlike the contracts in *Fischer, Nichols*, and *Wigand*, the alleged contract between Tessler and NBC contains an express promise to pay for use of the copyrighted materials. Thus, the district court cases do not support preemption of the Tessler/NBC contract.

In sum, this Court interprets that Fourth Circuit law subscribes to the majority view that a

---

[8] NBC also cites *Brown v. McCormick*, 23 F. Supp. 2d 594 (D. Md. 1998) and *Lamont v. Columbia Pictures*, 907 F. Supp. 144 (D. Md. 1995), but these decisions do not provide sufficient analysis for application to the present case. Both opinions find the plaintiffs' state law claims preempted without individuating the claims.

defendant's *express* promise to pay the plaintiff for use of copyrighted materials renders a breach of contract claim qualitatively different from a copyright infringement claim. As a result, Tessler's breach of contract claim is not preempted by Section 301(a) of the Copyright Act.

## 2. Sufficiency of Claim

NBC asserts that Tessler failed to state a breach of contract claim upon which relief can be granted, but the Court does not agree. First, Tessler has alleged the existence of a valid contract, in which NBC promised to pay Tessler for the use of Tessler's proprietary and copyrighted material. (Am. Compl. ¶¶ 26, 43.) Second, the Amended Complaint alleges a breach of this valid contract, stating that NBC used the PYP materials to create Trading Places without compensating Tessler. (Am. Compl. ¶¶ 28, 44.) Finally, the Amended Complaint clearly alleges damages. (Am. Compl. ¶ 45.) Therefore, Tessler has sufficiently plead the elements of a breach of contract action. *See Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004)("The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.").

The central thrust of NBC's opposing argument is that NBC "reported on this issue long before NBC's interactions with Plaintiff" and "Plaintiff does not identify any *original* element in her Materials that also appears in Trading Places." (Def.'s Br. at 24, 25.)(emphasis added). The "lack of novelty" argument, however, lacks merit in the context of an *express* contract. According to Nimmer, when a "plaintiff alleges defendant's breach of an *express* promise to pay for the use of plaintiff's idea, basically no state law requires novelty." 4 M. Nimmer & D. Nimmer, *Copyright* § 19D.06[B][2][a](2008). Furthermore, "if such a contract can be proved, it doesn't matter whether the idea is old." *Id.* (quotations omitted). Thus, even if Tessler's ideas were old and without

originality, it would not undermine the breach of contract claim.

Similarly, NBC's assertion that "a comparison of the Materials to Trading Places . . . confirms that NBC did not use Plaintiff's Materials" is equally unpersuasive.  (Def.'s Br. at 25.) Such a comparison of copyrighted works is permissible to assess substantial similarity in a copyright infringement claim, but it is not appropriate for disposing of a breach of contract claim.  In particular, "express contracts can require compensation for ideas whose unauthorized use would not result in liability as a matter of copyright law."   4 M. Nimmer & D. Nimmer, *Copyright* § 19D.05[A][1](2008).  Therefore, the breach of contract claim protects all of Tessler's PYP materials, even those that are not protected by copyright.  As Tessler stated at oral argument, this court only has the copyrighted materials before it, not the entirety of Tessler's "pitch" materials.  As a result, a dismissal of the breach of contract action would be premature at this stage, and should be denied.

## C.  Breach of Implied Contract (Count III)

With regard to Tessler's action for breach of implied contract, the Court must first resolve the ambiguity of whether Tessler has alleged an *implied-in-fact* contract, or an *implied-in-law* contract.  While the Amended Complaint is silent on the issue, Tessler's brief refers to Count III as an "implied-in-fact contract (or quasi-contract) claim."  (Pl.'s Br. at 26).  Thus, Tessler has mistakenly equated the two concepts, even though each represents a distinct cause of action.  For example, "*implied-in-fact* contracts are actual agreements between parties . . . proved by the parties' conduct. . . ."  4 M. Nimmer & D. Nimmer, *Copyright* § 19D.02[A][1][b](2008).  In contrast, "*implied-in-law* contracts, otherwise known as *quasi* contracts, are not actual agreements at all."  *Id.* "Instead of emerging by consent of the parties, [*implied-in-law* contracts] are obligations imposed by law in order to prevent unjust enrichment."  *Id.*  Because Tessler attempts to avoid preemption

of the claim on the grounds that it "requires a showing of unjust enrichment," (Pl.'s Br. at 26), the

Court will treat Count III as an action for breach of an *implied-in-law* (*quasi*) contract.

Tessler's breach of implied contract claim is clearly preempted by the Copyright Act.  As

described in Section B(1), PYP fits within the subject matter scope of federal copyright, satisfying

the first prong of the preemption test.  *Berge*, 104 F.3d at 1463.  And once within the subject matter

scope of copyright, "a state law cause of action for unjust enrichment or *quasi* contract should be

regarded as an 'equivalent right' and hence, preempted. . . ."  4 M. Nimmer & D. Nimmer, *Copyright*

§ 1.01[B][1][g](2008).  *See also Microstrategy, Inc. v. Netsolve, Inc.*, 368 F.Supp.2d 533, 537-38

(E.D. Va. 2005)(holding that unjust enrichment claim "is equivalent to the copyright claim and

contains no additional element rendering it qualitatively different from a copyright claim").  Thus,

Tessler's action in quasi contract clearly satisfies both prongs of the preemption test and should be

dismissed.

## D.  Conversion

### 1.  Preemption

Under the preemption framework described above, the central issue is again whether the

conversion claim contains an "extra element" that renders it "*qualitatively* different from a copyright

infringement claim."  *Berge*, 104 F.3d at 1463.  Preemption does not exist "if the plaintiff can prove

the extra element that the defendant unlawfully retained the physical object embodying plaintiff's

work."  *Id.*  A conversion claim is preempted, however, "where the plaintiff alleges only the

unlawful retention of its intellectual property rights and not the unlawful retention of the tangible

object embodying its work."  *Id.*  In other words, "an action for conversion will lie only for wrongful

possession of the *tangible* embodiment of a work, whereas a copyright action must be brought for

wrongful use of the *intangible* artistic property contained therein." 1 M. Nimmer & D. Nimmer, *Copyright* § 1.01[B][1][i] (2008)(emphasis added).

At oral argument, Tessler based the conversion claim on NBC's alleged reproduction and use of the PYP materials. According to Nimmer, "reproduction does not constitute conversion precisely because reproduction constitutes an interference with the *intangible* artistic property right, not with the *tangible* property right in the chattel that is being produced." 1 M. Nimmer & D. Nimmer, *Copyright* § 1.01[B][1][i] (2008)(emphasis added). For example, in *Microstrategy, Inc. v. Netsolve, Inc.*, cited by Tessler, the plaintiff based its conversion claim on the defendant's use of plaintiff's software beyond the scope of the licensing agreement. 368 F. Supp. 2d 533 (E.D. Va. 2005). The court held that the claim was preempted, "because Plaintiff alleges no physical object was unlawfully retained by Defendant." *Id.* at 537. *See also Alliance for Telecomms. Indus. Solutions, Inc. v. Hall*, 2007 WL 3224589, at *11 (D.Md. Sept. 27, 2007)("[Plaintiff's] allegations regarding the logo focus on its alleged misuse at the hands of the defendants . . . . Thus, to the extent that the claim for conversion of the logo is grounded in any modification, copying or distribution of the logo that [Defendants] may have done, it is preempted by the Copyright Act . . . ."). Therefore, Tessler's conversion claim is preempted to the extent that it is grounded in NBC's alleged unauthorized use of the PYP materials.

Tessler also alleges, however, that "NBC unlawfully retained all of the tangible objects, namely the DVD video and written [materials], that embodied Tessler's copyrighted materials." (Am. Compl. ¶ 26.) Thus, the conversion claim survives preemption to the extent that it is based on NBC's *physical* retention of Tessler's *tangible* materials. *See Hall*, 2007 WL 3224589, at *11 ("[Plaintiff's] claim for conversion of the logo is thus properly limited to a claim that [Defendant]

converted any tangible property containing the logo.").[9]

### 2. Sufficiency of Claim

NBC also argues that the conversion claim be dismissed under Rule 12(b)(6) for failure to sufficiently state a cause of action.  (Def.'s Br. at 26.)  The common law tort of conversion requires the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."  *State of New York v. Seventh Regiment Fund*, 774 N.E.2d 702, 710 (N.Y. 2002).  *See also Hartzell Fan, Inc. v. Waco, Inc.*, 505 S.E.2d 196, 201 (Va. 1998).[10] Here, NBC's possession of the PYP materials was authorized.  In fact, Tessler voluntarily provided the materials to NBC.  Tessler argues that NBC's failure to return the materials constitutes conversion, but this argument is not persuasive.  Under the common law, "a defendant who, though having custody of goods, does not exclude the owner from the exercise of his rights is not liable for conversion."  *Seventh Regiment Fund*, 774 N.E.2d at 710.  *See also Waco*, 505 S.E.2d at 201 ("Conversion is a tort involving injury to property, in which one wrongfully exercises or assumes authority over another's goods, *depriving him of their possession*.")(emphasis added).  At oral argument, Tessler conceded that she never requested the return of the PYP materials.  Thus, NBC did not "deprive" Tessler of her possession of the tangible materials.  As a result, any portion of the

---

[9] It should also be noted that a "plaintiff's ability to recover damages for conversion of the tangible items . . . will be limited to the value of these items themselves."  *Hall*, at *12. Therefore, if the *tangible* conversion claim withstood the Rule 12(b)(6) attack, Tessler would only stand to recover the retail value of a blank DVD disk and the total cost of paper copies for the remainder of the PYP materials submitted to NBC.  Pursuant to the next section, however, dismissal of the conversion claim under Rule 12(b)(6) is appropriate, which renders the issue of damages moot.

[10] NBC contends that New York law applies to the Tessler's conversion claim (Def.'s Br. at 26), and Tessler's brief does not dispute this contention.

conversion claim not preempted by federal law should be dismissed for failure to sufficiently state a cause of action.

## IV.  **RECOMMENDATION**

For the foregoing reasons, the Court recommends that NBC's Motion to Dismiss be GRANTED for the following claims: Count I (Copyright Infringement); Count III (Breach of Implied Contract); and Count IV (Conversion).  However, Count II (Breach of Contract) states a claim upon which relief can be granted, and is not preempted by the Copyright Act.  Thus, NBC's Motion to Dismiss should be DENIED for Count II.

24

## V.  **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(c), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.  A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).


_____
/s/
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 5, 2008

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Duncan G. Byers, Esq.
Duncan G. Byers, P.C.
142 W. York Street
Suite 910
Norfolk, Virginia 23510


Stephen E. Noona, Esq.
Kristan B. Burch, Esq.
Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, Virginia 23510


Fernando Galindo, Clerk


By_____
    Deputy Clerk
    December 5, 2008