UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CYNTHIA D. TESSLER,

        Plaintiff.

v.

NATIONAL BROADCASTING
COMPANY, INC.
        Defendant.

Civil Action No. 2:08-CV-234-RAJ-TEM

## AFFIDAVIT OF DAVID N. VENTKER

STATE OF VIRGINIA
CITY OF NORFOLK

I, David N. Ventker, hereby state:

1. I am an attorney licensed to practice law in the Commonwealth of Virginia and the State of North Carolina. I presently practice with the law firm of Ventker & Warman, PLLC, 101 West Main Street, Suite 810, Norfolk, Virginia, 23510. I have been practicing law for twenty-seven years, and have been in private practice in Hampton Roads for 20 years. I have been engaged in this matter by the firm of Kaufman & Canoles, P.C. to review legal fees incurred by the defendant to determine whether they are reasonable and appropriate.

2. I am in good standing with the Virginia State Bar, and I have been admitted to practice in this Court since 1991. Further details concerning my qualifications and experience are set forth in the copy of a recent *Curriculum Vitae*, which is attached as Exhibit "A."

3. I have engaged in litigation in various state and federal courts since becoming licensed to practice law in 1982, and I have experience with pursuing and defending commercial matters in state and federal courts in Virginia and North Carolina. I am also familiar with intellectual property disputes, including claims for copyright infringement.

1

4. Defendant's Norfolk law firm, Kaufman & Canoles, PC, and many of its attorneys, including Stephen Noona, are well known to me. I also have investigated the background, experience and qualifications of R. Johan Conrad, J Bradley Reeves and Matthew J. Carr, their associates, and co-counsel from NBC, Hilary Lane. Having left a fairly large local firm to start my own firm, I also have a thorough understanding of the legal market in the Hampton Roads area, and I am knowledgeable about the billing rates which are charged by attorneys in this market for complex commercial disputes.

5. Kaufman & Canoles' has provided me with its entire file, and I have reviewed the pleadings, correspondence, and billing records. Included in this review were the amended complaint, all briefs associated with the motion to dismiss filed by NBC, the report and recommendation of Magistrate Judge Miller, the briefs associated with the objections to the report and recommendation filed by both parties, and the ultimate opinion issued by Judge Jackson. I have examined the video recordings and other exhibits submitted by the parties. I have also met with Mr. Noona personally and conferred with Ms. Lane by telephone and questioned them about their activities. Finally, I have reviewed the declarations submitted by Stephen Noona and Hilary Lane regarding fees and expenses for legal services.

6. The litigation in this matter was initiated by Duncan Byers, counsel for Cynthia Donn Tessler, in the form of a Complaint filed on May 20, 2008 against the National Broadcasting Company, Inc.. An amended complaint was filed by Mr. Byers on July 21, 2008. Essentially, Ms. Tessler's claim was that NBC committed violations of federal copyright law, breached express and implied contracts, and converted property owned by Ms. Tessler in the form of program materials titled "Parenting Your Parents." NBC's violations allegedly occurred when it broadcast a series of human interest stories on its Nightly News program under the title "Trading Places."

7. Kaufman & Canoles has asked me to review bills and invoices for services rendered through February 25, 2009, showing

        Total Fees:   $59,799.53
        Total Costs:  $    188.32

8. In applying the standard applied by the Fourth Circuit in *Barber v. Kimbrell's, Inc*, 577 F.2d 216 (4th Cir. 1978), I have the following opinions:

(1) The time and labor expended were reasonable and appropriate. This was potentially significant litigation and the consequences for an unfavorable outcome for NBC could have been far reaching. The decision to seek dismissal of the entire matter at the Rule 12(b)(6) stage was creative and not one that would have been made by many defense attorneys. The favorable result saved considerable future expenses by avoiding discovery and further motions

2

      practices.

    (2)    The arguments made by Mr. Byers in support of his client were difficult because of their subject matter, and the attempt to extract state law claims from a copyright action.

    (3)    Copyright and intellectual property cases are more complex than typical commercial disputes, and the number of attorneys with an understanding of the law required to successfully defend such claims is limited.

    (4)    Opportunity costs for counsel are apparent – by devoting their efforts to defending NBC in this matter, defense counsel were unable to devote efforts to other clients and other matters. The billing statements show the precise number of hours claimed, and these are hours that could not be used for other matters.

    (5)    The customary fee for like work charged by other intellectual property attorneys is actually considerably higher than that claimed in this matter. Fees for experience intellectual property litigators of Mr. Noona's caliber and experience are routinely exceeding $600.00 per hour.

    (6)    At the beginning of the litigation, defense counsel anticipated they would be required to conduct significant discovery before they would have the case in a posture to seek summary judgment. The arguments made at the 12(b)(6) stage, which proved to be successful, were creative and resulted in a much smaller legal bill than otherwise was anticipated.

    (7)    Legal fees were kept lower than otherwise would have been expected by the active involvement of Ms. Lane in drafting pleadings and supervising the defense.

    (8)    The amount in controversy was in the millions of dollars, and an unsuccessful outcome may have required a change in NBC's method of operations.

    (9)    Mr. Noona is widely regarded as one of the most skilled and experienced intellectual property litigators in Hampton Roads.

    (10)    From a defense counsel's perspective, I cannot state the case is one which would be considered "undesirable" in the local legal community.

    (11)    There was no prior attorney/client relationship between Kaufman & Canoles and NBC.

    (12)    I have no knowledge regarding the nature of such awards in similar cases.

8.    It is my opinion, based on my knowledge and experience, that the rates and amounts charged by for legal services on behalf of NBC in this matter are in every respect fair, reasonable and consistent with the fees charged by attorneys in this market with the same level of training, experience and skill for the circumstances of this case. Having reviewed the documents prepared in this matter and the billing records, I see no evidence of duplicative or repetitive work product, and it is evident to me that the case has been appropriately and efficiently staffed. In my experience, many other firms in the area would have charged considerably more to obtain the results which have been obtained in this matter on behalf of NBC.

9.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 10, 2009 in Norfolk, Virginia.

_____
David N. Ventker, Esq.